UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS F. CORBETT, ANTHONY D'AQUILA,
THOMAS GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCO, and ANTHONY
PIROZZI, as Trustees and Fiduciaries of the Local
282 Welfare Trust Fund, the Local 282 Pension
Trust Fund, the Local 282 Annuity Trust Fund, the
Local 282 Job Training Trust Fund, and the Local
282 Vacation and Sick Leave Trust Fund,

                          Plaintiffs,                    <u>REPORT AND</u>
                                                                            <u>RECOMMENDATION</u>

   -against-
                                                                               CV 10-5905 (ADS) (ETB)


CMR CONTRACTING, LLC, and LTU
INDUSTRIES INC. a/k/a LTU INDUSTRY INC.,

                          Defendants.
------------------------------------------------------------------------x

TO THE HONORABLE ARTHUR D. SPATT, United States District Judge:

       The plaintiffs, the Trustees of five employee benefit funds (the "Funds"), bring this action against defendants, CMR Contracting, LLC ("CMR") and LTU Industries, Inc. ("LTU"), pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132. Plaintiffs seek to recover unpaid employee benefit contributions owed to the Funds pursuant to the terms of the collective bargaining agreements entered into by the parties, as well as interest, liquidated damages, audit fees, and attorney's fees and costs. Plaintiffs' filed a motion for a default judgment on March 16, 2011 and the matter was referred to the undersigned for a report and recommendation with respect to whether the motion should

-1-

be granted, as well as any accompanying damages.

For the following reasons, I recommend that plaintiffs' motion for a default judgment be granted and that plaintiffs be awarded damages in the amount of $416,978.32 from CMR and $35,364.80 from LTU.

## FACTS

The defendant corporations are managed by a single president and operate out of the same office locations in Catskill and Maspeth, New York. (Compl. ¶ 7-12.) The President, Louis Gabriel, executed collective bargaining agreements ("CBAs") with the Local 282 Union on behalf of both CMR and LTU. (Compl. ¶ 12.) Defendant CMR was a party to the New York City Heavy Construction & Excavating Contract for the period July 1, 2002 through June 30, 2006, and to the Metropolitan Trucker's Association & Independent Trucker's Contract for the period July 1, 2006 through June 30, 2009. (Tr. 7-9; Compl. ¶ 10.) LTU was a party to the New York City Heavy Construction & Excavating Contract for the period July 1, 2006 through June 30, 2009, and is still a party to the contract for the period July 1, 2009 through June 30, 2013. (Tr.11; Compl. ¶ 11.)

Signing a CBA binds a party to both the CBA and the Trust Agreement. (Tr. 12; Compl. ¶ 14.) The CBAs require members to make contributions to the Funds on behalf of their employees at specified rates for each hour of covered employment. (Tr.13; Compl. ¶ 13.) The Trust Agreement serves as a mechanism for ensuring that parties comply with their contribution obligations. Pursuant to the Trust Agreement, employers must submit remittance reports with their fund contributions. (Compl. ¶ 15; Supp. Cody Decl. Ex. A, Art. 9 § 1(c).) These reports

detail the number of hours covered employees worked as well as the employer's corresponding obligations to the Funds on behalf of each worker. (Compl. ¶ 15.) The Trust agreement further ensures that members comply with their contribution obligations through an audit provision that advises members that "the Trustees may at any time audit the pertinent books and records of any Employer . . . ." (Supp. Cody Decl. Ex. A, Art. 9 § 1(d).)

Pursuant to the Trust Agreement, failure to comply with an audit request within twenty days after a written demand entitles the Funds to make determinations of payments in arrears based upon formulas prescribed in the Trust Agreement. (Supp. Cody Decl. Ex. A, Art. 9 § 1(e).) This procedure is called an estimated audit. (Tr. 14) Where an employer fails to file any remittance reports at all, the amount due for a given month is calculated by looking at the remittance reports filed by the employer for the previous twelve months. (Tr. 15; Supp. Cody Decl. Ex. A, Art. 9 § 1(e).) The month in which the employer reported the largest number of hours becomes the base month. (Tr. 15; Supp. Cody Decl. Ex. A, Art. 9 § 1(e).) Ten percent (10%) is added to the number of hours reported for the base month and it is then multiplied by the contribution rate to determine what the employer owes. (Tr. 15; Supp. Cody Decl. Ex. A, Art. 9 § 1(e).) Pursuant to the terms of the Trust Agreement, this figure is binding on the employer. (Supp. Cody Decl. Ex. A, Art. 9 § 1(e).)

Where an employer submits a remittance report but the Funds believe there to be a discrepancy between the number of hours reported by the employer and those actually worked by employees, a different formula is prescribed. (Tr. 14) In this scenario, an estimated audit is conducted by taking fifty percent (50%) of the hours reported by the employer's remittance reports and multiplying it by the relevant Fund contribution rate. This calculation is then added

to the number reported by the employer.  (Tr. 14; Supp. Cody Decl. Ex. A, Art. 9 § 1(f).)

Pursuant to the Trust Agreement, estimated audit contributions are binding on the Employer.  (Supp. Cody Decl. Ex. A, Art. 9 § 1(f).)  "The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the Collective Bargaining Agreement between the said Employer and the Union . . . ."  (Supp. Cody Decl. Ex. A, Art. 9 § 3.)  An employer who is in breach of the CBA for five or more business days is required to pay interest, attorney's fees, auditor's fees and liquidated damages covering the period from the date the payment was due through the date payment is actually made.  (Id.)

Plaintiffs engaged the accounting firm of Wagner & Zerman ("W&Z") to perform audits with respect to both CMR and LTU in order to determine whether each defendant had contributed to the Funds in accordance with their applicable CBAs and, if not, to determine the amount of the delinquency.  (Jones Decl. ¶ 8.)  With respect to CMR, plaintiffs requested that W&Z conduct an audit for the period commencing April 1, 2006.  (Jones Decl. ¶ 12.)  W&Z sought access to CMR's books and records on several occasions but the company's accountant, Philip Peterson, was uncooperative and only provided W&Z with limited documentation.  (Jones Decl. ¶ 13.)  W&Z sought additional documentation needed to complete the audit; however, CMR failed to cooperate.  (Jones Decl. ¶¶ 15-20.)  Accordingly, an audit of CMR's books and records was not able to be completed.  (Jones Decl. ¶ 21.)

CMR's failure to cooperate with the Funds' request for an audit rendered CMR in breach of its obligations under the Trust Agreement, entitling the Funds to conduct their own estimated audit.  The Funds' collections office conducted two estimated audits of CMR.  (Tr. 18.)  The first covered the time period of April 1, 2006 through June 30, 2006.  (Tr. 18; Supp. Cody Decl. Ex.

H.)  CMR had submitted remittance reports for this time period but, as noted above, failed to respond to an audit request.  (Tr. 18-19; Supp. Cody Decl. Ex. I.)  This audit followed the method prescribed for determining discrepancies in reported hours where a remittance report is filed.  (Tr. 19; Supp. Cody Decl. Ex. H.)  As a result, the Funds' collections office found that CMR had failed to report 1,664 hours to the Funds.  (Supp. Cody Decl. Ex. H.)

The second CMR estimated audit covered the period July 1, 2006 through June 30, 2009.  (Tr. 22; Supp. Cody. Decl. Ex. J.)  CMR submitted remittance reports that stated actual hours for fourteen (14) months during that time period, from July 2006 until August 2007.  (Supp. Cody. Decl. Ex. K.)  Contributions for this time period were calculated according to the discrepancy method, discussed <u>supra</u>.  For the following seven months, from September 2007 until March 2008, CMR submitted remittance reports that indicated no employee hours.  (<u>Id</u>.)  The collections office did not calculate an estimate with respect to these hours.  (Tr. 25.)  For the remaining eleven months, from April 2008 through February 2009, CMR failed to submit any remittance reports.  (Supp. Cody. Decl. Ex. K.)  The collections office looked to the previous twelve months and used the greatest number of hours reported plus ten percent (10%) in order to calculate the hours for which CMR owed contributions.  (Tr. 23.)  The second estimated audit found that CMR owed contributions for 27,820 hours.  (Supp. Cody. Decl. Ex. J.)

W&Z was able to conduct an audit of LTU for the period August 21, 2007 through March 27, 2011.  (Tr. 35.)  W&Z reviewed LTU's payroll records and noted the discrepancies between the hours reported to the Funds and those contained in the company books.  (Tr. 35.)  Where a review of the payroll records revealed that a covered employee worked more hours than LTU had reported to the Funds, the auditor noted a discrepancy.  (Tr. 37.)  LTU owes contributions to the

Funds for the unreported hours discovered as a result of the audit. (Tr. 38.) Accordingly, LTU is liable for 1,814.5 unreported hours (Jones Decl. Ex. C.)

Defendants have failed to remit the contributions owed to the Funds. (Supp. Cody. Decl. J.) Pursuant to their powers under the Trust Agreement, plaintiffs filed this action to recover the outstanding contributions on December 17, 2010. (Supp. Cody Decl. Ex. A, Art. 9 § 4) ("[T]rustees are authorized and empowered to take whatever proceedings may be . . . necessary in their discretion for enforcement of Employer's obligations including . . . proceedings at law.")) An inquest was held before the undersigned on December 1, 2011. Defendants did not appear at the inquest. In support of their motion, plaintiffs called two witnesses, Theresa Cody, a senior member of the collections office for the Local 282 trust funds, and Kenneth Jones, an accountant with the firm Wagner & Zwerman, LLP.

## DISCUSSION

I.  Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-moving party. See Fed. R. Civ. P. 55. After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability." Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)). Damages, however, must be proven, usually "at an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed."

Rivera, 1995 WL 362429, at *2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1993)).  The plaintiff "is entitled to all reasonable inferences from the evidence it offers."  Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

As a threshold matter, Federal Rule of Civil Procedure 54(c) "limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint . . . ."  Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y.); see also Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.")  However, plaintiffs' request for interest, in addition to its actual damages, may be awarded in an amount determined by the court. See Ames, 227 F.R.D. at 362 (finding that Rule 54(c) "does not require plaintiff to have demanded a sum certain" with respect to damages that accrue during the pendency of a proceeding and are "explicitly requested in the complaint, and sufficiently established by the affidavits submitted by plaintiff[]").

Here, plaintiffs filed their Complaint on December 17, 2010.  Defendants failed to answer or otherwise respond to the Complaint.  Plaintiffs moved for entry of a default judgment against the defendants on March 16, 2011.  The Clerk of the Court certified the defendants' default on March 21, 2011. (Certificate of Default dated Mar. 21, 2011.)  As stated above, defendants did not appear at the inquest held before the undersigned on December 1, 2011.

Accordingly, I recommend that plaintiffs' motion for a default judgment be granted.

II.  Damages Pursuant to the Agreement

A.  CMR

CMR failed to provide W&Z with the necessary paperwork to complete an outside audit. (Jones. Decl. ¶¶ 13-20.) Accordingly, the Funds' collections office conducted two estimated audits of CMR for the period April 1, 2006 through June 30, 2009. The funds used two different methods to determine the number of hours for which CMR owed contributions, as set forth supra. In total, CMR submitted remittance reports for twenty-one of the thirty-nine months audited. (Supp. Cody. Decl. ¶ 30.) In accordance with Article IX, Section 1(f) of the Trust Agreement, for those twenty-one months, the Funds took fifty percent (50%) of the number of hours reported by CMR and multiplied that number by the relevant contribution rate.[1] (Supp. Cody. Decl. Ex. I.) In accordance with Article IX, Section 1(e) of the Trust Agreement, for the remaining eighteen months, the Funds looked at the previous twelve months and utilized the month in which CMR had provided the most hours as the base month. (Id.) The funds then took ten percent (10%) of the number of hours reported for the base month and multiplied that number by the relevant contribution rate. (Id.) The testimony and documentary evidence submitted at the inquest established that CMR owes $172,569.92 in contributions for the period April 1, 2006 through June 30, 2009. (3d Supp. Adler Decl. ¶ 4.)

B.  LTU

LTU complied with the Funds' request to conduct an audit of its books. W&Z completed an audit of LTU's book and records for the period August 21, 2007 through March 27, 2011. (Jones Decl. Ex. C.) The audit compared the hours reported to the Funds by LTU with

---

[1] The contribution rates vary depending on the fund.

those detailed in LTU's payroll. The audit found that LTU owes $11,272.04 in contributions for hours that LTU failed to report to the Funds during the audit period. (Id.)

Based on the foregoing, I recommend that the plaintiffs be awarded $172,569.92 in unpaid employee benefit contributions from CMR and $11,272.04 in contributions from LTU.

III.     Interest

The Amendment to the Restated Agreement and Declaration of Trust, effective October 28, 2003, provides for interest to be calculated at a rate of one and one-half percent (1½%) per month. (Am. Restated Agreement and Decl. of Trust dated Oct. 28, 2003.) This amounts to eighteen percent (18%) per annum. (Tr. 26.) Pursuant to the Trust Agreement, interest on late contributions "is calculated from the first day of the month when the payment was due to the date when payment was made." (Supp. Cody. Decl. ¶ 47.)

Plaintiffs seek interest on the unpaid contributions to the Funds through the date of final judgment herein. The Funds calculated the interest due and owing as of January 4, 2012, with total interest accrued for CMR amounting to $114,625.76, with interest continuing to accrue at a rate of $85.10 per day. (3d Supp. Adler Decl. ¶¶ 8-9.) As of January 4, 2012, the total interest accrued for LTU was $5,103.64, with interest continuing to accrue at a rate of $5.56 per day. (Id. ¶¶ 12-13.)

As of the date of this Report and Recommendation, January 20, 2012, the total interest due and owing from CMR is $115,987.36.[2] With respect to LTU, the amount of interest due and

---

[2] Calculated by multiplying the per diem interest rate of $85.10 by the number of days between January 4, 2012 and January 20, 2012, which is 16.

owing is $5,192.60.[3] Accordingly, I recommend the plaintiffs be awarded interest as follows: (1) $115,987.36 from CMR, with additional interest to be calculated at a rate of $85.10 per day through the date of judgment herein; and (2) $5,192.60 from LTU, with additional interest to be calculated at a rate of $5.56 per day through the date of judgment.

IV.    Liquidated Damages

The Trust Agreement requires members in default to pay the Funds liquidated damages. (Supp. Cody Decl. Ex. A, Art. 9 § 3.) Liquidated damages are calculated by using "the greater of: (1) The amount of interest charged on the unpaid contributions, or (2) Liquidated damages in the form of 20 percent of the unpaid contributions." (Supp. Cody Decl. Ex. A, Art. 9 § 3(d)(2).)

Plaintiffs seek liquidated damages in the form of "double interest" since this figure is greater than twenty percent (20%) of the unpaid contributions. As set forth above in connection with the amount of interest due, as of the date of this Report and Recommendation, January 20, 2012, the amount of liquidated damages due and owing is as follows: (1) $115,987.36 from CMR, with additional liquidated damages to be calculated at a rate of $85.10 per day through the date of judgment herein; and (2) $5,192.60 from LTU, with additional liquidated damages to be calculated at a rate of $5.56 per day through the date of judgment.

V.    Audit Fees

Plaintiffs also seek to recover their fees incurred in connection with the audits conducted

---

[3] Calculated by multiplying the per diem interest rate of $5.56 by the number of days between January 4, 2012 and January 20, 2012, which is 16.

in this action.  (3d Supp. Adler Decl. ¶¶ 37-38; Pl. Supp. Mem. of Law 9-10.)  The costs of an audit are routinely recoverable in ERISA actions.  See, e.g., Gesauldi v. MBM Indus., Inc., No. CV 10-2607, 2010 U.S. Dist. LEXIS 96319, at *5 (E.D.N.Y. Sept. 13, 2010) (awarding $4,260 in audit costs); Masino v. A to E, Inc., No. 09 CV 1651, 2010 U.S. Dist. LEXIS 95583, at *22 (E.D.N.Y. Sept. 3, 2010) (awarding $1,137 in audit fees); Gesualdi v. Andrews Trucking Corp., No. 09 CV 565, 2010 U.S. Dist. LEXIS 54596, at *3 (E.D.N.Y. June 3, 2010) (awarding $13,382.50 in audit fees).

Here, plaintiffs are entitled to $700 in audit fees for the two estimated audits conducted with respect to defendant CMR.  (Supp. Cody Decl. ¶¶ 54-55 and Ex. A, Art. 9 § 3(b) (entitling the Funds to recover $350 in audit fees for each audit conducted).)  With respect to LTU, plaintiffs incurred $3,109.88 in fees for the audit conducted by W&Z.  (Jones Decl. ¶ 41.)  I find such fees to be reasonable and recommend that plaintiffs be awarded the requested amount of audit fees.

VI.   Attorney's Fees and Costs

   A.   Attorney's Fees

Plaintiffs seek to recover $21,047.50 in attorney's fees and costs, pursuant to Sections 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and Article IX, § 3(a) of the Trust Agreement.  (3d Supp. Adler Decl. 4.)  Pursuant to the Trust Agreement, "attorney's fees . . . shall be equal to the actual amount to be billed to the Trustees by their counsel for work performed in connection with . . . [the] matter."  (Id. at Art. 9 § 3(a).)  Plaintiffs' counsel submits that the attorney's fees are broken down as follows:  (1)  $2,194.00 for work performed solely

with respect to CMR; (2) $364.50 for work performed solely with respect to LTU; and (3) $18,489.00 for work performed with respect to both defendants. (3d Supp. Adler Decl. ¶ 25.) Accordingly, plaintiffs seek $11,438.50 in attorney's fees from CMR and $9,609.00 in attorney's fees from LTU. (3d Supp. Adler Decl. ¶ 25.).

The standard method for determining the amount of reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983). "In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants." Carco Group, Inc. v. Maconachy, No. CV 05-6038, 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011) (collecting cases).

Attorney's fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998). Here, plaintiffs' counsel provided records of the date, time spent, and the nature of the work performed by each person who worked on the case. The time records provide adequate detail and the time expended is reasonable.

The time records submitted demonstrate that plaintiffs' counsel employed two partners on this matter, Joseph J. Vitale and Elizabeth O'Leary, charging hourly rates of $400 per hour and $370 per hour, respectively. (3d Supp. Adler Decl. ¶ 22.) The firm also utilized three associates, Michael S. Adler, Molly A. Brooks and Bradley J. Sollars, at rates of $275 per hour from the commencement of this action through June 30, 2011 and $375 per hour from July 1, 2011 forward. Finally, five paralegals expended time on this action at rates of $90 per hour through

June 30, 2011 and $110 per hour from July 1, 2011 forward. (Id.) While the hourly rates of the partners are in line with the case law in this district, I find the rates charged for associates and paralegals to be excessive. Accordingly, I recommend that the hourly rates be reduced as follows: (1) $300 for Michael Adler for all hours billed; (2) $200 per hour for Molly A. Brooks and Bradley J. Sollars; and (3) $75 per hour for all paralegal time billed.

Taking into account the reductions set forth above, I recommend that plaintiffs be awarded $9,618.00 in attorney's fees against CMR and $8,482.00 in attorney's fees against LTU, for a total attorney's fees award of $18,100.00.

  B. <u>Costs</u>

Plaintiffs also seek to recover their costs pursuant to Sections 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and Article IX, § 3(a) of the Trust Agreement. (3d Supp. Adler Decl. ¶ 19.) Plaintiffs have incurred a total of $4,231.36 in costs associated with this action, which consist of court filing fees, service of process fees, transcript fees, postage, photocopies and transportation, all of which are recoverable. (Id. ¶ 26.) All of the costs were incurred in connection with both defendants. Accordingly, I recommend that plaintiffs be awarded costs in the amount of $4,231.36, with $2,115.68 to be awarded against each defendant.

RECOMMENDATION

For the foregoing reasons, I recommend that plaintiffs' motion for a default judgment be granted against both defendants and that plaintiffs be awarded damages with respect to CMR Contracting LLC as follows: (1) $172,569.92 in unpaid employee benefit contributions; (2) $115,987.36 in interest, with additional interest to be calculated at a rate of $85.10 per day

through the date of judgment herein; (3) $115,987.36 in liquidated damages, with additional liquidated damages to be calculated at a rate of $85.10 per day through the date of judgment; (4) audit fees in the amount of $700.00; (5) $9,618.00 in attorney's fees; and (6) $2,115.68 in costs, for a total monetary award of $416,978.32, plus additional interest and liquidated damages.

I further recommend that plaintiffs be awarded damages with respect to LTU Industries Inc. as follows: (1) $11,272.04 in unpaid employee benefit contributions; (2) $5,192.60 in interest, with additional interest to be calculated at a rate of $5.56 per day through the date of judgment herein; (3) $5,192.60 in liquidated damages, with additional liquidated damages to be calculated at a rate of $5.56 per day through the date of judgment; (4) audit fees in the amount of $3,109.88; (5) $8,482.00 in attorney's fees; and (6) $2,115.68 in costs, for a total monetary award of $35,364.80, plus additional interest and liquidated damages.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED**.

Dated: Central Islip, New York
      January 20, 2012

                                      /s/ E. Thomas Boyle
                                      E. THOMAS BOYLE
                                      United States Magistrate Judge